# UNITED STATES DISTRICT COURT
### for the
### Eastern District of California

**FILED**

May 18, 2021

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) |
| | ) |
| Gabriel Diop | ) |
| | ) |
| | ) |
| _Defendant(s)_ | ) |

Case No.     2:21-mj-0079 CKD

# SEALED

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ February 2, 2021, _____ in the county of _____ Sacramento _____ in the _____ Eastern _____ District of _____ California _____ , the defendant violated:

| _Code Section_ | _Offense Description_ |
|---|---|
| 18 U.S.C. § 1341 | Mail Fraud |

This criminal complaint is based on these facts:

See attached affidavit of Postal Inspector Matthew Norfleet.

☒ Continued on the attached sheet.

_/s/_
_Complainant's signature_

Matthew Norfleet, Postal Inspector
United States Postal Service
_Printed name and title_

Sworn to me and signed telephonically.

Date:     May 18, 2021   11:30 am

_Judge's signature_

City and state:     Sacramento, California

Carolyn K. Delaney, U.S. Magistrate Judge
_Printed name and title_

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Matthew Norfleet, being first duly sworn, hereby depose and state as follows:

## I.      INTRODUCTION AND AGENT BACKGROUND

1.      I submit this affidavit in support of a criminal complaint and application for an arrest warrant for Gabriel Diop.

2.      Based on the facts set forth in this affidavit, I submit that there is probable cause to believe that Diop violated 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), 1708 (mail theft), and 1028A (aggravated identity theft), in the State and Eastern District of California, beginning on an unknown date but no later than in or around December 2020, and continuing to at least in or around March 2021.

3.      I am a Postal Inspector with the United States Postal Inspection Service (the "USPIS"), and have been since 2018.  Previously, I was employed as a Special Agent by the U.S. Secret Service for around seven years.  My official duties in these positions included and include investigating crimes involving mail fraud, wire fraud, bank fraud, and false identity documents.

4.      I am currently assigned to the San Francisco Division Mail Fraud Team of USPIS. Prior to my employment with USPIS, I graduated from law school, the Criminal Investigator Training Program at the Department of Homeland Security Federal Law Enforcement Training Center ("FLETC"), and the Special Agent Training Course at the U.S. Secret Service Training Center.  In each of those programs, I received instruction on constitutional and criminal law, searches and seizures, and the Fourth Amendment.  In addition to formal continuing education and on-the-job training regarding searches, seizures, and the requirements of the U.S. Constitution, I have received training from USPIS, the Secret Service, and prior employers, regarding financial crime.  I also completed the Basic Investigator Computer Examination Program at the U.S. Secret Service Training Center, which prepares criminal investigators to collect digital evidence from electronic devices.  I have investigated fraud and financial crime for the past ten years.  In the course of my employment as a federal law enforcement officer, I have participated in executing numerous warrants related to fraud investigations authorizing the

search of locations such as residences, storage facilities, places of business, computers and other digital storage devices, and vehicles. These investigations have resulted in arrests of numerous individuals, seizure of evidence of criminal activity, and forfeiture of assets related to criminal activity. As a result of my training and experience, I am familiar with many methods of operation used to commit fraud.

5. The information in this application is based on my personal knowledge and information provided to me by other law enforcement officers and individuals. This affidavit is intended to show only that there is sufficient probable cause for the requested criminal complaint and arrest warrant and does not set forth all my knowledge about this matter.

## II.    SUMMARY OF PROBABLE CAUSE

6. USPIS is investigating a scheme by Gabriel Diop to impersonate individuals, redirect and steal their mail, and apply for financial benefits in their names that are held by the California State Controller's Office.

7. Diop first determines that a person is entitled to a significant amount of unclaimed property being held in that person's name by the State Controller's Office. Then, Diop submits a fraudulent change-of-address form to the United States Postal Service to temporarily change the victim's mailing address to an address controlled by or easily accessed by Diop.

8. Using fraudulent identification and notary documents, Diop then submits false claims to the State Controller's Office for unclaimed property held in a victim's name, and requests that the State Controller's Office send the unclaimed assets to an address he controls or can readily access.

## III.    FACTS ESTABLISHING PROBABLE CAUSE

### A.    Key Terms and Background on Unclaimed Property.

9. This affidavit makes repeated reference to the following individuals and entities, who are described briefly in this section for clarity:

a)    The California State Controller's Office is overseen by the California State Controller, who is responsible for accountability and disbursement of the financial

resources of the State of California.  The State Controller's Office has an Unclaimed Property Division, which is responsible for administering the Unclaimed Property program in the State of California.  The State Controller's Office conducts fraud investigations through its Legal Office, which employs Attorneys and Investigators.  The State Controller's Office's Unclaimed Property Division and Legal Office are located in Sacramento County, California, which is in the Eastern District of California.

b)   Gabriel Diop is suspected of submitting a series of fraudulent claims to the State Controller's Office.  Diop is believed to be a French national residing in Oak Park, California.[1]

c)   Pettinato & Associates is an unclaimed property investigation firm (otherwise known as an "heir finder") which assists owners of unclaimed property in making claims to that property through California's Unclaimed Property program.

d)   Capital Pacific is also an unclaimed property investigation firm that, similar to Pettinato & Associates, has received claims to unclaimed property that are suspected to be fraudulent and sometimes mirror claims submitted through Pettinato & Associates.

1.   Background Regarding California's Unclaimed Property Process.

10.   Under state law in each state, certain financial assets, such as bank accounts, brokerage accounts, and insurance policy balances, escheat to the state when financial institutions cannot contact the owners of the assets.  These assets are sometimes referred to as unclaimed property.

///

---

[1] Concurrently with my preparation of this affidavit, I applied to the United States District Court for the Central District of California for a warrant to search Diop's residence in Oak Park.  That court issued search warrant number 2:21-mj-02427 on May 17, 2021.  I expect to execute that search warrant at the same time I execute the instant arrest warrant for which I am applying.

11.     In California, the State Controller's Office receives and deposits unclaimed property into the state's General Fund.  The State Controller's Office also maintains a list of individuals whose unclaimed property was so deposited, and will return an equal amount to the true owners of unclaimed property when those true owners/claimants provide proof that the property in question belongs to them.  The total amount of unclaimed property held by the State of California is, presently, approximately $8 billion.  The State Controller's Office routinely sends correspondence, documentation, and returned funds by first class mail through the United States Postal Service.

12.     Individuals may submit claims for unclaimed property held by the State of California directly to the State Controller's Office, but there are also professionals who make it a business to locate and contact the individuals whose funds were escheated.  These professionals are known as "heir finders" because the true owners of the escheated funds are frequently the heirs of the original owners.  Heir finders typically collect a percentage of the funds returned as a fee for the efforts to locate individuals entitled to unclaimed property and for their assistance in completing the identity verification paperwork required by the State Controller's Office.  With a written agreement, the State Controller's Office will issue separate payments to the owner of the funds and to the heir finder directly.

13.     Heir finders typically contact the parties eligible for the return of funds, not the other way around.  Requesting return of funds directly from the State Controller's Office is a straightforward process requiring information that would be available to the party eligible to receive the funds.  Other than notifying owners or their heirs of otherwise overlooked assets, heir finders can do little to simplify the process of claiming the funds.

14.     Under State Controller's Office procedures, a claimant requesting return of property of $1,000 or greater must submit a notarized Unclaimed Property Division claim form, along with copies of a government-issued identification card, such as a driver license, and a Social Security card, and a document connecting the claimant to the reported address and the address where the claim is requested, if it is different than the reported address.  Certain claims

under $400 may be submitted through an electronic process that confirms claimants' identities through consumer credit records.

2.     Background Regarding Postal Operations.

15.     In the modern day, sorting of mail between the time it is collected and when it is placed in a mailbox for delivery is almost entirely automated.  Mail is scanned in high-speed sorting machines and sorted by destination address.  Postal sorting machines are programmed to scan and follow a proprietary delivery bar code, which mailers are encouraged to pre-print on their mail.  Mail without pre-printed barcodes can be read by Optical Character Recognition software and the barcode printed on the outside of the envelope by postal sorting machines to speed further sorting of the mail.

16.     Mail Forwarding Service is offered by the Postal Service for limited periods of time to customers who wish to change their address.  Postal Service customers can submit a mail forwarding request in writing or online through the Postal Service's website at USPS.com to forward mail from one delivery address to another.  This is known as a change-of-address request, or "COA" within the Postal Service.

17.     As a temporary service, the Postal Service will forward mail addressed to any individual or family from one address to a different address, which gives postal customers the opportunity to receive their mail and update their correspondents with current address information.  Forwarding orders only apply when both the name and address on the mail match the name and address in a change-of-address request.  Mail to the same address in a name that does not have a change-of-address request on file will not be automatically forwarded.  For example, mail addressed to an adult child who moves out of their parents' home can be forwarded without forwarding the parents' mail, or a roommate can forward mail addressed to an apartment without forwarding the other roommates' mail.  Similarly, mail addressed to the same person at a different address without a change-of-address request on file will not be forwarded.  For example, a postal customer can forward mail addressed to a former home without forwarding mail in the same name addressed to a workplace.  Furthermore, because postal customers can

forward mail from any U.S. address to any other U.S. address, many postal customers have the same first and last name as other postal customers in different ZIP codes.

18.     While mail forwarding was accomplished in the past by asking the local carrier at the old address to handwrite the new address, or apply a preprinted label, it is now accomplished by an automated system that reroutes the mail in transit before it reaches the delivery unit of the old address.  As a result, Mail Forwarding Service only applies if both the name and address on the forwarded mail match a current change-of-address request found in the Computerized Forwarding Service.  Many mailers, such as banks who mail account statements, receive change-of-address information directly from the Postal Service, and use that to update their customer records.  Some classes of mail do not receive forwarding service, such as advertising mail, which can be delivered to the current occupant of an address in any name regardless of whether that address has a change-of-address request on file.

19.     Except for the temporary change-of-address orders in the computerized forwarding service, there is no database matching postal customer names to addresses.  There is also no requirement that a customer provide a phone number, email address, or any other contact information to receive mail by street delivery.  In general, mail is deliverable as addressed in any name to any street address unless a resident refuses it.

20.     In contrast, to receive mail at a post office box, a customer must complete an Application for Post Office Box Service, on which the customer provides a residential address, presents identification, and provides the names of people that will be receiving mail at the post office box.  The Application for Post Office Box Service is referred to inside the Postal Service as a PS Form 1093.  Mail delivered to a post office box can be returned to sender if it does not match the names on the PS Form 1093, but many customers are unaware of that rule and individual post offices have discretion to deliver mail in any name to a post office box.

21.     The Postal Service operates a website for the use of customers and the general public at USPS.com.  The website offers information related to postal services, such as the locations and operating hours of post offices and blue mail collection boxes.  Customers can use

USPS.com to submit requests for forwarding, register for other postal services, and purchase postage and other Postal Service products.  USPS.com maintains user profiles, known internally as "eReg accounts," for registered users of the website.  To register a user profile, the Postal Service asks customers for contact information, such as email addresses, telephone numbers, and delivery addresses.

22.     The Postal Service also offers a service called Informed Delivery.  Customers who sign up for Informed Delivery receive daily emails containing automated images of postal mail addressed to them and expected to be delivered within the next day.  To use Informed Delivery, eligible customers must submit documentation that they are a recipient of mail at the applicable delivery address, and provide an email address to receive the scanned images of incoming mail.

B.     **Genesis of Investigation.**

1.     Request for Unclaimed Property Submitted in March 2019.

23.     On or around March 25, 2019, the Unclaimed Property Division of the State Controller's Office received a claim submitted by Pettinato & Associates on behalf of an individual with the initials E.K. (hereafter, "Victim 1").[2]  The claim form listed Victim 1's mailing address as 3162 Southwycke Terrace, Fremont, California 94536.  The claim was for four assets owned by Victim 1, whose address last known to the financial institution escheating the funds was in Oakland, California.

24.     In support of the claim, the person purporting to be Victim 1 submitted a copy of a Massachusetts driver's license, a Social Security card, a Pacific Gas & Electric utility bill showing the Fremont address, and a credit card statement also showing the Fremont address listed on the claim form.  Each of these pieces of identification appeared to be in the name of Victim 1.  Consistent with requirements established by the State Controller's Office, the claim submitted in Victim 1's name appeared to be notarized.

---

[2] Victim 1's true and full name is known to me, but is not included here so as to protect Victim 1's privacy.  The same is true for all victims identified by their initials in this affidavit.

25.     The State Controller's Office approved the submitted claim.  In accordance with its policies, the State Controller's Office issued payment to Victim 1 via two state-issued checks, called warrants.  Warrant number 61-508370 was issued on or around May 21, 2019, payable to Victim 1 in the amount of $707,749.62.  Warrant number 61-571998 was issued on or around May 29, 2019, payable to Victim 1 in the amount of $537,311.32.  Both warrants were sent via first class mail to 3162 Southwycke Terrace, Fremont, California 94536.

26.     As the maker of warrant 61-571998, the State Controller's Office traced the funds to the account of first deposit, an account held in Victim 1's name at U.S. Bank that received this first deposit on or around June 18, 2019.  Using its authority under California Government Code Section 7480, the State Controller's Office obtained statements from that U.S. Bank account from May 14, 2019, through September 13, 2019.  I reviewed these statements and they contain records of the following transactions that occurred in this U.S. Bank account in 2019:

a)      A deposit made at an ATM in Fremont on June 18, totaling $537,311.32;

b)      Three ATM withdrawals in Fremont on June 24, totaling $1,000;

c)      Two ATM withdrawals in Westlake Village, Ventura County, California on July 8, totaling $1,000;

d)      Two ATM withdrawals in Westlake Village on July 19, totaling $1,100;

e)      Two ATM withdrawals in Westlake Village on July 24, totaling $800;

f)      ATM withdrawals in Agoura Hills, California on July 29, July 31, August 5, August 7, and August 12, for $803 each;

g)      An ATM withdrawal in Agoura Hills on August 29 for $253; and

h)      A withdrawal from an ATM in Thousand Oaks, California on August 30, for $103.

27.     On September 3, 2019, and September 6, 2019, the debit card associated with this U.S. Bank account was used for online change of address orders submitted to the Postal Service.

28.     Based on my training and experience as a Postal Inspector, I know that financial institutions such as U.S. Bank do not maintain video footage of ATM deposits for more than a

few months, at most.  Hence, while I served a subpoena on U.S. Bank for all records related to the account associated with Victim 1's name, including any associated surveillance photographs or video, I do not expect to receive any photographs or video of any ATM transactions relating to this account.

2.     <u>Claim Submitted in Victim 1's Name Determined to Be Fraudulent.</u>

29.     On or around October 11, 2019, an investigator with Pettinato & Associates contacted the State Controller's Office with suspicions that numerous claims submitted by Pettinato & Associates—including the claim submitted in Victim 1's name—may have been fraudulent.  One fact that made the claims suspicious is that in each case, the claimants contacted Pettinato & Associates to request that firm's services without Pettinato & Associates having first notified the claimants that they may be eligible for return of funds.

30.     After the State Controller's Office was alerted to the potentially fraudulent nature of Victim 1's claim, it re-examined the documents submitted in support of the claim.  The State Controller's Office then determined that all the supporting documentation it contained for the purposes of address verification—including the Massachusetts driver's license and the Social Security card—appeared altered or entirely counterfeit.  The State Controller's Office also contacted the notaries whose purported stamps were used to notarize the documents and determined that the notary stamps used on the claim submitted by "Victim 1" did not belong to the notaries, were not recorded by the notaries, and were counterfeit.  USPIS also determined that the Pacific Gas & Electric bill submitted to establish Victim 1's connection to Southwycke Terrace was printed with a delivery barcode which belonged to an entirely different address.

**C.**     <u>**Diop Connected to Past Fraudulent Claims Submitted to State Controllers' Office Involving 3162 Southwycke Terrace.**</u>

31.     After the State Controller's Office determined that the claim submitted in Victim 1's name was fraudulent, agents from USPIS reviewed historical change-of-address requests involving 3162 Southwycke Terrace in Fremont.

///

32.     In the past two years alone, several different individuals requested that mail addressed to them at 3162 Southwycke Terrace in Fremont be forwarded to other addresses. Among these names on Postal Service mail forwarding requests from 3162 Southwycke Terrace were Diop and an individual with the initials "P.A." (hereafter, "Victim 2").

33.     Staff from the State Controller's Office searched past records of claims to property for claims submitted by Victim 2, and determined that Victim 2 filed at least three notarized claims through Pettinato & Associates in 2019 and 2020.  Specifically, on or around January 29, 2019, the State Controller's Office sent Victim 2 a payment of $26,781.41; on or around February 20, 2019, the State Controller's Office sent Victim 2 a payment of $500,570.69; and on or around November 19, 2020, the State Controller's Office sent Victim 2 a payment of $65,144.28.

34.     As occurred with the claim submitted in Victim 1's name, the State Controller's Office subsequently conducted an in-depth review of the claims submitted in Victim 2's name. Following this review, the State Controller's Office suspected that the claims submitted in Victim 2's name were also fraudulent.

35.     The State Controller's Office's suspicion was based on the fact that the handwriting on the claim form submitted in Victim 2's name appeared similar to the handwriting on the claim form submitted in Victim 1's name.  Furthermore, similar to the claim submitted in Victim 1's name, the claim submitted in Victim 2's name contained a Florida notary stamp applied several times to each document, apparently by a person with little skill inking a rubber stamp.

36.     Further review of claims submitted to the State Controller's Office as part of this investigation uncovered a claim using similar methods—submitted through Pettinato & Associates and containing a Florida notary stamp and similar handwriting to the claim forms in the names of Victims 1 and 2—that was mailed to the State Controller's Office using postage purchased at a post office self-service kiosk on April 6, 2017.

**D.   Diop Connected to Additional Fraudulent Claims Involving Post Office Box 16 in Agoura Hills.**

37.    One of the suspected fraudulent claims identified by Pettinato & Associates on or around October 11, 2019, involved an individual with the initials "W.T." (hereafter, "Victim 3").

38.    Pettinato & Associates provided an email to the State Controller's Office in which Pettinato & Associates informed "Victim 3" that claim instructions mailed to the address provided on the submitted claim form (912 Thistlegate Road, Oak Park, California 91377) had been returned to Pettinato & Associates as undeliverable by the Postal Service.  In response, "Victim 3" requested that Pettinato & Associates use Post Office Box 16, Agoura Hills, California 91376 (hereafter, "PO Box 16") for all future correspondence with "Victim 3" regarding this claim.

39.    Based on open source records, staff for the State Controller's Office determined that PO Box 16 was associated with at least one other suspected fraudulent claim submitted to the State Controller's Office, this one in the name of an individual with the initials "G.K." (hereafter, "Victim 4").

40.    The State Controller's Office requested that USPIS research change-of-address requests involving PO Box 16 for the past two years.  USPIS did so on or around December 29, 2020, and determined that on the date of this query, there were approximately fourteen different active change-of-address requests forwarding mail to PO Box 16.  None of the active change-of-address requests forwarding mail to PO Box 16 appeared to be associated with people who shared surnames or any other common factors (such as a prior address in common).

41.    Of the fourteen names associated with active change-of-address requests to forward mail to PO Box 16, twelve were also associated with recent claims to property submitted to the Unclaimed Property Division of the State Controller's Office.  Of these twelve claims, all but two were for more than $500,000, with three claims being for property worth over a million dollars each.

///

Affidavit                                                                11

42.     Based on my years of training and experience as a Postal Inspector, I know that it is extremely rare for a single mail delivery address (such as PO Box 16) to receive mail forwarded from more than two or three postal customers at a time.  This is particularly true where the individuals purporting to forward their mail to the same forwarding address do not share a surname or a prior address in common.

43.     Postal customers who wish to register for a post office box fill out and submit PS Form 1093, which is titled "Application for Post Office Box Service."  The official PS Form 1093 associated with PO Box 16 shows that it is rented to Diop, with a listed residential address at Diop's residence in Oak Park, California.

**E.     Diop Connected to Fraudulent Claim Submitted in Name of B.F. (Victim 8).**

1.     State Controller's Office Suspicion Regarding Claim Purportedly Submitted by B.F.

44.     One of the fourteen change-of-address requests directing mail to PO Box 16 was in the name of an individual with the initials B.F. (hereafter, "Victim 8").  As of December 2020, the State Controller's Office was holding approximately $690,000 in unclaimed property in Victim 8's name, and a pending claim had been submitted to the State Controller's Office by an individual purporting to be Victim 8.

45.     On or around December 2, 2020, staff from the State Controller's Office contacted the notary public whose name was used on the claim form purportedly submitted by Victim 8.  The notary public confirmed to the State Controller's Office that she did not perform the notarization in question and that both the signature and stamp on the claim form were fraudulent.  The notary public also informed the State Controller's Office that she uses an embosser to notarize documents, not an ink stamp as appears on the claim form purportedly submitted by Victim 8.

46.     Following this conversation with the notary public but still in or around December 2020, staff from the State Controller's Office attempted to contact the individual who submitted the claim in Victim 8's name.  Specifically, staff from the State Controller's Office left at least

two voicemail messages at the telephone number listed on the claim form submitted in Victim 8's name; both voicemail messages requested that the person using Victim 8's name call the State Controller's Office to discuss the claim submitted in Victim 8's name.

47.     On December 24, 2020, an individual purporting to be Victim 8 contacted the Property Owner Advocate's Office of the State Controller's Office, and asked for a status update regarding the claim submitted in Victim 8's name.  At the direction of law enforcement, a staff member working in the Unclaimed Property Division responded to the inquiry and directed the individual purporting to be Victim 8 to contact a State Controller's Legal Office Staff Attorney named Harpreet Nakhwal.  Beyond her regular duties, Nakhwal agreed to handle the suspicious Victim 1 claim as an undercover law enforcement operative.  On December 24, 2020, the individual purporting to be Victim 8 left two voicemails and sent an email to Nakhwal from a Google email address that appeared to be from Victim 8 because it had Victim 8's first and last name in it (hereafter, the "B.F. Gmail Address").

        2.     Law Enforcement Ruse to Identify and Locate Diop Using Victim 8's Claim.

48.     On or around January 4, 2021, at law enforcement's direction, Nakhwal sent a reply email to the B.F. Gmail Address.  Nakhwal's email stated that the State Controller's Office was attempting to process the claim submitted by Victim 8, but was missing an original claim form.  Nakhwal's email further requested that Victim 8 provide a mailing address where such an original claim form could be sent.

49.     On or around January 4, 2021, Nakhwal received a reply email from the B.F. Gmail Address.  This reply email asked that the original claim form be sent to 25124 Malibu Road, Malibu, California 90265.

50.     A Lexis/Nexis database search revealed that this address in Malibu belonged to an individual with the initials "K.H." (hereafter, "Victim 5").  Victim 5's name was one of the

///

///

fourteen names associated with change-of-address requests to forward mail to PO Box 16 that law enforcement agents reviewed on or around December 29, 2020.[3]

51.    At my direction, staff from the State Controller's Office prepared the claim form which the individual purporting to be Victim 8 expected to be mailed to him.  Staff from the State Controller's Office placed the claim form in an envelope, handling it with gloves, addressed to Victim 8 on Malibu Road as requested, and then gave the envelope to me.  I ensured that the envelope containing the ruse claim form was canceled at a Postal Service mail sorting facility, but then removed the envelope from the mailstream and retained it.[4]

52.    On or around January 20, 2021, I met the Postal Service letter carrier responsible for delivering mail to 25124 Malibu Road in Malibu.  I gave the letter carrier the envelope containing the ruse claim form and watched the letter carrier deliver it to 25124 Malibu Road on that day.  I surveilled the mailbox associated with 25124 Malibu Road for the remainder of the day, but did not see anyone approach the mailbox or collect the mail on that day.

53.    The following morning, on January 21, 2021, at around 10:30 a.m., I returned to 25124 Malibu Road and confirmed that the envelope containing the ruse claim form was no longer inside the mailbox.

54.    On or around February 2, 2021, the State Controller's Office received the returned ruse claim form that was originally delivered to 25124 Malibu Road in Malibu.  The claim form arrived in the State Controller's Office in Sacramento in an envelope sent via the Postal Service and postmarked on January 30, 2021, from Santa Clarita, California.  Based on my training and experience, I know that mail collected in Malibu is centralized and postmarked from Los

---

[3] I analyzed the various change-of-address requests associated with Victim 8 and Victim 5 as of January 2021.  At that time, mail addressed to Victim 8 at a previous address in Palo Alto, California would be forwarded to PO Box 16.  Mail address to Victim 5 at 25124 Malibu Road, Malibu, California 90265 would also be forward to PO Box 16.  However, mail addressed to Victim 8 at Victim 5's address of 25124 Malibu Road—as the individual purporting to be Victim 8 requested over email to Nakhwal on or around January 4, 2021—would be delivered to that address.

[4] "Cancelling" mail includes marking postage stamps as previously used, printing a postmark with the date and location the mail entered the mailstream, and adding barcodes to the outer envelope if needed to route the mailpiece through the sorting machines to its destination.

Angeles, but mail collected in nearby Agoura Hills or Oak Park is centralized and postmarked in Santa Clarita.

55.    Following return of the ruse claim form to the State Controller's Office, the individual purporting to be Victim 8 continued to communicate with Nakhwal from the B.F. Gmail Address.

### 3.    Confirmation That Person Purporting to Be Victim 8 in Communications With State Controller's Office Is Not True Victim 8.

56.    Concurrently with the operation of the ruse claim form mailing, Assistant Chief Counsel for the State Controller's Office Shawn Silva contacted the person believed to be the true Victim 8 through telephone numbers associated with Victim 8 in Lexis/Nexis databases.

57.    On or around February 10, 2021, Silva spoke with an individual who identified himself as Victim 8 on the telephone.  This individual provided personal information corroborating his true identity as Victim 8 and confirmed that he had not filed a claim with the State Controller's Office for unclaimed property, nor had he ever retained the services of Pettinato & Associates.

58.    The true Victim 8 confirmed that he had never heard of Pettinato & Associates. The true Victim 8 also told Silva that he had been contacted by his local post office several months previously about a change-of-address request that he had not filed.  Finally, the true Victim 8 told Silva that his true first name was different than the one used on the claim (starting in "B"), that he had never used that as his first name, and that the B.F. Gmail Address was not his email address.

### 4.    Diop Observed Taking Controlled Mail From 25124 Malibu Road and Returning to His Residence.

59.    On or around March 24, 2021, Nakhwal sent an email to the B.F. Gmail Address stating, "I have received a status update on your check. It was mailed to you on Monday." The same day, Nakhwal received an email from the B.F. Gmail Address replying: "Harpeet, ¶ Good news ! Thank you for helping out. ¶ Just for clarification : It was mailed to my address in Malibu ?"

60.     On or around March 29, 2021, I received an empty envelope printed with the State Controller's Office seal and return address information that was prepared for mailing by the State Controller's Office, addressed to Victim 8 at 25124 Malibu Road in Malibu.  I placed a stamp on this empty envelope and processed it through a sorting machine used to sort mail for the final leg of delivery.  This machine also produces a scanned image of mail which is used by the Postal Service's Informed Delivery program to send an email to the recipient containing an image of mail that the recipient can expect to receive.

61.     However, instead of allowing the empty envelope to go out for delivery through the normal course of business, I removed the envelope from the mailstream and retained it.

62.     On or around March 30, 2021, at approximately 10:00 a.m., I installed a hidden surveillance video camera facing the front of Diop's residence.  At approximately 1:00 p.m., I drove to 25124 Malibu Road and surveilled the mailbox.  At or around 2:09 p.m. that day, I saw Diop arrive at the mailbox in a Mercedes-Benz vehicle bearing California license plate 8KJF533, travelling northbound on Malibu Road.  I recognized Diop from his California Driver License photograph, which I had previously reviewed.  I also recognized Diop from surveillance video footage of PO Box 16 that I had previously viewed.

63.     Diop got out of the car, opened each mailbox from 25120 to 25126 Malibu Road, and removed several pieces of letter mail.  Diop then approached the security gate for the entrances to 25124 and 25126 Malibu Road, appeared to look behind the gate, and returned to the mailboxes.  Diop then returned to the car with the letter mail still in his hand and drove away, continuing north on Malibu Road.

64.     That same day, I contacted the USPIS National Law Enforcement Communication Center to request the name of the registered owner of the car bearing California license plate 8KJF533.  The National Law Enforcement Communication Center informed me that this car was registered to Gabriel Diop, with a listed address of Diop's residence.

65.     Law enforcement did not trail Diop's car once it departed the Malibu Road location.  However, approximately thirty minutes after Diop left the Malibu Road location, I

observed live surveillance footage from the video surveillance camera installed outside Diop's residence. In this footage, I saw Diop drive into the driveway of his residence in the same car with the same license plate I had seen on Malibu Road. I observed Diop get out of the car, enter his residence through a garage door, then back the car into the garage through another door.

          5.      <u>Second Law Enforcement Ruse to Identify and Locate Diop Using Claim Submitted in Victim 8's Name.</u>

66.      On or around March 31, 2021, I returned the hidden surveillance camera to a position facing Diop's residence. At approximately 10:00 a.m. that day, I drove directly from Diop's residence to the intersection of Pacific Coast Highway and Civic Center Way in Malibu, which is on the route to reach 25124 Malibu Road from the south as I observed Diop do the previous day, traveling with the flow of traffic along the route recommended by Google Maps. The trip took approximately thirty minutes.

67.      At approximately 11:45 a.m., I learned that a Postal Service letter carrier was presently delivering mail on Malibu Road, travelling southbound. To continue the ruse, I deliberately damaged the envelope addressed to Victim 8, which had been processed through the mail sorting machines, and then sealed the empty, damaged envelope in a plastic bag. The plastic bag was a standard Postal Service item preprinted with an apology note beginning with the words "We Care" in large print. Such plastic mailers are typically used by the Postal Service to deliver mail that is damaged prior to delivery.

68.      I then continued northbound and met the mail truck headed in the opposite direction, south of 25124 Malibu Road, which indicated to me that the letter carrier had already delivered that day's mail to that address. I identified myself as a Postal Inspector, gave the letter carrier the sealed apology bag, told her it was important the damaged item be delivered that same day, and asked her to please go back and deliver it as addressed, which she agreed to do. Postal Inspectors surveilling the mailbox associated with 25124 Malibu Road reported to me that they observed the letter carrier return and make a delivery to that mailbox, as I had requested.

///

69.     I resumed surveillance of 25124 Malibu Road and at or around 2:08 p.m. that day, I saw Diop arrive travelling northbound in the Mercedes-Benz vehicle bearing California license plate 8KJF533.  Diop parked in a driveway on the west side of the road, one or two driveways north of 25124 Malibu Road, with the hazard lights of his car blinking.  Diop walked south in the street on the west side of Malibu Road past the mailbox.  Diop then turned quickly back northbound, opened the mailbox associated with 25124 Malibu Road, and removed the plastic bag containing the damaged envelope.

70.     Diop then walked back to his car holding the plastic bag, remained in the car briefly, then exited the car again and walked back to the mailbox.  Diop opened and closed the mailbox again, and then returned to his car.  Momentarily, Diop drove away northbound on Malibu Road towards Pacific Coast Highway.

71.     I waited a few minutes for any moving vehicles on Malibu Road to clear away, then looked into the mailboxes.  The mailboxes for 25120 and 25126 Malibu Road contained some delivered mail.  The mailboxes associated with 25122 and 25124 Malibu Road contained nothing.  None of the mailboxes contained the plastic bag or the damaged envelope which had been placed there earlier that same day by the letter carrier at my request.

72.     Approximately half an hour later, at around 2:39 p.m., I saw on surveillance video Diop's car pull into the driveway at his residence.  I observed Diop exit the car and enter the house.  I monitored the surveillance video periodically and observed that Diop's car remained in the driveway of his residence until sometime after 5:00 p.m.

73.     The same day, on or around March 31, 2021, at or around 4:10 p.m., a person identifying himself as Victim 8 called the Postal Service's customer service toll-free telephone number.  The caller claiming to be Victim 8 complained that his "warrant" for a "big amount" of life insurance funds sent from the State Controller's Office was missing because the caller

///

///

///

received an empty envelope in a "USPS We Care plastic bag."[5]  The caller said he did not have a pen to write with because he was in his car when he called.

74.     Also on March 31, 2021, Nakhwal received an email from the B.F. Gmail Address that contained a photograph of the ruse damaged envelope and the "We Care" mailer. The email sent by the B.F. Gmail Address stated, "As I have mentioned during my last call, I have received an envelope today from your office and I assume this was the proceedings of my claim , but it looks like the envelope has been opened sometimes [sic] between the issuance and the delivery. At this point, what are my options ? ¶ I already called the USPS to complain about this problem."

75.     In a subsequent email message sent the same day from the B.F. Gmail Address, the person purporting to be Victim 8 explained that in order to receive a replacement check, "I have a PO Box sometimes where you can mail the necessary forms. The address is : PO BOX 16 AGOURA HILLS CA 91376-0016."

### F.     Additional Facts Connecting Diop to the Ongoing Fraudulent Scheme.

76.     The USPS.com eReg account database includes a user profile associated with PO Box 16 in the name Gabriel Diop.  This database also contains information that Diop's eReg account was last accessed from the Internet Protocol ("IP") address of 108.185.181.115.  Law enforcement agents searched a publicly available IP address database for the IP address 108.185.181.115, and this search revealed that this IP address was provided by an Internet service provider known as Spectrum/Charter Communications.

77.     Records from Charter Communications relating to this IP address in May 2021 revealed that between January and May 2021, this IP address was registered to Gabriel Diop with a service address at his residence and a registered email address of bills@gabrieldiop.net.

///

---

[5] The unclaimed funds belonging to Victim 8 were not, as the caller indicated, the result of an escheated life insurance policy.  However, a different suspected fraudulent claim submitted to the State Controller's Office and directed to the same Malibu Road address did involve proceeds from an escheated life insurance policy.

78.     On May 12, 2021, I requested a search of the Postal Service's database of change-of-address requests for any evidence that Diop submitted a request to forward mail from his residence or from PO Box 16. My search revealed no such change-of-address requests.

      1.     <u>Fraudulent Claim Submitted in Name of Victim 6 by Diop in March 2021.</u>

79.     On or around March 26, 2021, an heir finder operating under the name Capital Pacific received an investigator agreement for unclaimed property submitted in the name of an individual with the initials D.S. (hereafter, "Victim 6"). Capital Pacific shared this claim submission with the State Controller's Office. The State Controller's Office reviewed the claim submitted in the name of Victim 6 and determined that it bears many of the same hallmarks as other fraudulent claims suspected to have been submitted by Diop.

80.     For instance, the claim submitted in Victim 6's name used a Florida notary stamp previously identified by the State Controller's Office as counterfeit, as well as an image of a false California Driver License. The Postal Service also received a change-of-address request on March 3, 2021, requesting that mail sent to Victim 6 at Victim 6's prior address in Burbank, California be forwarded to 25122 Malibu Road.

81.     Capital Pacific received the investigator agreement in Victim 6's name by Priority Mail Express, which is a Postal Service delivery product that provides mail tracking capabilities. Although the return address on the Priority Mail Express mailer containing the claim submitted in Victim 6's name indicates that the mailer came from Burbank, the mailer was accepted into the mailstream at the Thousand Oaks Main Post Office. I reviewed images captured by lobby cameras at the Thousand Oaks Main Post Office during the time when the Priority Mail Express mailer containing the claim forms submitted in Victim 6's name was mailed. I recognized Diop to be the person who mailed the Priority Mail Express mailer containing the documents submitted in Victim 6's name.

      2.     <u>Fraudulent Claim Submitted by Diop in Name of Victim 7 in March 2021.</u>

82.     Also in March 2021, Capital Pacific received an investigator agreement by mail in the name of an individual with the initials J.M. (hereafter, "Victim 7").

83.    The documents submitted to Capital Pacific in Victim 7's name used addresses in Sunnyvale, California and in Maine.  However, the documents arrived at Capital Pacific in an envelope postmarked from Santa Clarita, California, which is the mail sorting center for mail collected in Oak Park, California.

84.    On or around March 3, 2021, the Postal Service received a request to forward Victim 7's mail from a prior address in Sunnyvale to 25122 Malibu Road.  The postage used to mail the investigator agreement to Capital Pacific in Victim 7's name included a unique two-dimensional barcode making the postage trackable by the Postal Service.  I tracked the postage and determined that it was purchased from a self-service kiosk at the Thousand Oaks Main Post Office in December 2020.  I also determined that the postage was purchased using the same credit card number used to submit six separate change-of-address requests to forward mail to PO Box 16, which originated online from an IP address associated with Diop's residence.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

## IV.    AUTHORIZATION REQUEST

85.    Based on the foregoing, I submit that there is probable cause to believe that Gabriel Diop violated provisions of federal criminal law.  Accordingly, I respectfully request that the Court issue a criminal complaint and warrant for Diop's arrest.

86.    I further request that the Court order that all papers in support of this application, including the affidavit, complaint, and arrest warrant, be sealed until further order of the Court. Sealing these documents is necessary because the complaint and arrest warrant are relevant to an ongoing investigation into the criminal conduct of a person, namely, Diop.  Diop does not know that law enforcement has requested a warrant for his arrest.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation and the safety of law enforcement officers attempting to locate and arrest Diop.

Respectfully submitted,

/s/
_____
Matthew Norfleet
Postal Inspector
United States Postal Inspection Service

Subscribed and sworn to telephonically on:    May 18, 2021  at 11:30 am

_____
The Honorable Carolyn K. Delaney
UNITED STATES MAGISTRATE JUDGE

/s/ SAM STEFANKI
_____
Approved as to form by AUSA Sam Stefanki